Michael L. Tuchin (State Bar No. 150375)
mtuchin@ktbslaw.com
Samuel M. Kidder (State Bar No. 284015)
skidder@ktbslaw.com
Eitan Arom (State Bar No. 342703)
earom@ktbslaw.com
KTBS LAW LLP
1801 Century Park East, 26th Floor
Los Angeles, California 90067
Telephone:    (310) 407-4000
Facsimile:    (310) 407-9090

*Counsel for Rachel Gindi*
*as Trustee of the JRG Trust #219*

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>CARE FOR THE ELDERLY, Inc.,<br><br>　　　　Debtor. | Case No. 2:26-bk-10221-BR<br><br>Chapter 11<br><br>**LIMITED OBJECTION AND RESERVATION OF RIGHTS IN RESPONSE TO DEBTOR'S CASH COLLATERAL MOTION AND FIRST-DAY DECLARATION**<br><br>Re: Dkt. 9, 13<br><br>**Hearing Date:**<br>Judge:　Hon. Barry Russell<br>Date:　　January 20, 2026<br>Time:　　10:00 a.m.<br>Place:　　Courtroom 1668<br>　　　　　255 East Temple Street<br>　　　　　Los Angeles, CA 90012 |

KTBS LAW LLP
1801 CENTURY PARK EAST, TWENTY-SIXTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

Rachel Gindi, in her capacity as trustee of the JRG Trust #219 (the "Gindi Trust"), hereby files this limited objection and reservation of rights (the "Limited Objection") in response to the *Omnibus Declaration of Elliot Zemel in Support of Debtor's Emergency "First Day" Motions* [Dkt. 9] (the "Zemel Declaration") and *Debtor's Emergency Motion for Entry of an Interim Order: (I) Authorizing the Debtor to Use Cash Collateral; (II) Granting Adequate Protection; (III) Scheduling a Final Hearing; and (IV) Granting Related Relief* [Dkt. 13] (the "Cash Collateral Motion") and respectfully states as follows.

## I. INTRODUCTION

1.  Debtor operates a skilled nursing facility on premises leased to it by the Gindi Trust. The lease expired in 2023. After Debtor refused to cooperate in a safe and orderly transfer to a replacement operator, the Gindi Trust filed an unlawful detainer action in the Los Angeles Superior Court. Conspicuously absent from the Zemel Declaration is the fact that Debtor filed its chapter 11 petition ***the day before trial*** in the unlawful detainer action.

2.  In its first-day pleadings, Debtor makes allegations that it unsuccessfully made in pretrial motions in the state court and which were scheduled to be tried in state court this week. The allegations are gratuitous and unrelated to the relief requested, and the Gindi Trust disputes them in their entirety. However, this Limited Objection seeks only to correct certain basic facts about the Gindi Trust's interests in the estate, reserve the Gindi Trust's right to more fully respond at a later date, and clarify certain relief sought in the Cash Collateral Motion.

## II. FACTUAL BACKGROUND

3.  Given the time constraints associated with the filing of this response, the background set forth herein is not a complete history of the events leading to this chapter 11 case. The Gindi Trust will provide a more extensive background at the appropriate time. This background is provided only to support the Limited Objection and address the more pervasive misstatements in the first-day pleadings.

4.  Debtor operates a skilled nursing facility at 2312 W. 8th Street, Los Angeles, CA 90057 (the "Premises"). It leased the Premises from the Gindi Trust. A copy of the Gindi Trust's

1

operative unlawful detainer complaint, to which the lease is attached, is attached to this Limited Objection as **Exhibit A**.[1]

5. The lease commenced on December 1, 1994, and provided for a term of nine years plus four extensions of five years each, for a total of 29 years. Lease § 2. Thus, it expired by its own terms on November 30, 2023. After the lease's term, the lease "may at any time be terminated either by the Lessor or the Lessee giving the other 30 days' written notice." Lease § 24.

6. The lease also provides that "all furniture, furnishings and fixtures and equipment, are the property of the Lessor" and "shall be replaced by Lessee as needed . . . and all such replacements shall belong to Lessor." Lease § 10. Upon termination, the lease requires Debtor to "turn over to Lessor the entire operation of the nursing home intact without discharge of any patients" and to "cooperate with Lessor (or Lessor's sublessee or assignee or agent) to accomplish the foregoing," including by turning over all personal property with no additional consideration. *Id.* § 23. Finally, the lease provides that it "may not be modified orally or in any other manner than by an agreement in writing signed by all parties." *Id.* § 27.

7. After the lease expired and the parties were not able to agree to renew it, the Gindi Trust served a 30-day termination notice in December 2024 and filed an unlawful detainer action in Los Angeles Superior Court the next month. The parties have been engaged in the unlawful detainer litigation for more than a year. In that time, Debtor conducted discovery (including serving requests for production) and filed a demurrer and a motion for summary judgment, both of which the state court overruled. After multiple continuances, the unlawful detainer action was set for trial on January 12, 2026.

---

[1] The complaint was corrected and refiled following a technical error with the original filing, and the corrected, refiled complaint is the version attached hereto. The Gindi Trust requests that this Court take judicial notice of the complaint and the lease attached thereto pursuant to Rule 201 of the Federal Rules of Evidence. *See, e.g., Trigueros v. Adams*, 658 F.3d 983, 987 (9th Cir. 2011) ("[W]e may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." (citation and internal quotation marks omitted)).

8. Debtor filed this case on January 11, 2026, the literal eve of the unlawful detainer trial. Now, Debtor asks for emergency relief that includes granting adequate protection liens and superpriority administrative expense claims for the Small Business Administration and Yehuda Schmukler ("Schmukler"), a key executive of Debtor. The Cash Collateral Motion alleges that Debtor has employed Schmukler since 2012 and granted him a security interest in 2020. Cash Collateral Mot. ¶ 1. However, Schmukler did not file a UCC-1 financing statement until December 9, 2025, and Debtor states that it intends to avoid the filing of the financing statement as a preferential transfer. *Id.* ¶ 11. Even though Debtor claims Schmukler "is owed $0 with a voidable lien," *id.* ¶ 37, the Cash Collateral Motion proposes to grant him adequate protection liens and claims senior to the claims of the Gindi Trust and all unsecured creditors.

9. The Cash Collateral Motion and Zemel Declaration make numerous misleading allegations and arguments about the Gindi Trust that are unrelated to the relief sought. These allegations were poised to be resolved at a trial in state court this week. Refuting them and understanding the Gindi Trust's right to the Premises are necessary predicates to moving forward with this case. For now, however, the Gindi Trust offers only the following corrections, based on the lease and other judicially noticeable facts, while reserving the right to respond more fully in future pleadings:

10. ***Debtor's claim that the Gindi Trust seeks the "displacement of the patients" and to "jeopardize" their health and well-being (Cash Collateral Mot. ¶¶ 15, 35).*** The Gindi Trust's primary interest is in the health and safety of patients. The lease provides that the patients must remain at the Premises, and the Gindi Trust is committed to that result. To that end, the Gindi Trust has identified qualified replacement operators, but Debtor has refused to cooperate with them. Given Debtor's refusal to cooperate in a safe transition, the Gindi Trust, from the outset of the unlawful detainer action, has sought the appointment of a receiver with the power to ensure patient health and safety, selected in close collaboration with the California Department of Public Health.

11. ***Debtor's claim that the Gindi Trust aims to "steal" its assets (including licenses) and effect a "hostile takeover" (Cash Collateral Mot. ¶¶ 15, 33).*** Debtor's sole basis for this accusation is that the Gindi Trust filed the unlawful detainer action and another action in state court.

3

1  The use of legal process to enforce rights under a lease is not an attempt to "steal" property or
2  conduct a "hostile takeover." Moreover, because the lease has been terminated, Debtor has no
3  interest in any of the personal property used to the operate the property, which belongs to the Gindi
4  Trust, and it must cooperate with a safe transition of the premises.

5        12. ***Debtor's claim that it must conduct discovery to locate elusive agreements (Cash***
6  ***Collateral Mot. ¶ 31).*** Debtor alleges that the lease was extended orally and/or that a signed lease
7  extension may exist, but Debtor "currently does not have a copy of the fully signed Lease
8  Amendments" and may need discovery from the Gindi Trust or other parties. *Id.* The lease prohibits
9  oral agreements, and Debtor has had more than a year of negotiations, litigation, and discovery to
10 find any smoking-gun lease extensions. Despite propounding comprehensive written discovery to
11 which the Gindi Trust responded, Debtor still cannot identify any signed extension. Indeed, Debtor
12 filed this case the day before a trial that would conclusively determine all of these issues, including
13 its theories about undiscovered writings and promissory estoppel.

14       13. ***Debtor's claim that its longtime executive is potentially also its largest creditor.*** As
15 the Cash Collateral Motion and Zemel Declaration make clear, Schmukler's employment
16 relationship with Debtor is a key facet of its promissory estoppel argument in the state court. Yet
17 the bankruptcy filing is the first time the Debtor revealed to the Gindi Trust (or anyone else, as far
18 as the Gindi Trust knows) that it allegedly signed an agreement with Schmukler in 2020 granting
19 him liens and a $10 million severance package. Debtor did not produce this purported agreement
20 during a year of contentious civil litigation. The idea that the Gindi Trust would be in the dark about
21 this $10 million secured golden parachute strains credulity given its "close relationship" with Debtor
22 and Debtor's allegation that the Gindi Trust was "integral to the conversation and negotiation with
23 Schmukler." Cash Collateral Mot. ¶¶ 31–32. Debtor's sudden discovery of a security interest that
24 goes back years (but was recorded just before bankruptcy) calls this bankruptcy and Debtor's
25 motives into question. The purported Schmukler claim may be an attempt to muddy the waters and
26 manufacture a basis for future relief. The Gindi Trust intends to pursue discovery related to the
27 legitimacy of the alleged Schmukler agreement and dispute any claim or lien related to it.
28

KTBS LAW LLP
1801 CENTURY PARK EAST, TWENTY-SIXTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

4

### III. LIMITED OBJECTION AND RESERVATION OF RIGHTS

14. The Cash Collateral Motion relies on specious and contradictory allegations, which the Gindi Trust reserves all rights to rebut. These allegations will be disproven in the state court action if and when that action resumes. Still, in the interest of allowing Debtor to operate the Premises until the parties' rights can be determined and a safe transition assured, the Gindi Trust does not object to the first-day pleadings except to the limited extent described below.

15. The Gindi Trust objects to the Cash Collateral Motion to the extent it could be read to grant Schmukler adequate protection in the form of replacement liens in unencumbered Debtor property and superpriorty administrative expense claims. Schmukler is defined in the Cash Collateral Motion as a "Secured Creditor." The proposed order, in turn, grants the Secured Creditors adequate protection liens and superpriority claims.

16. Given Debtor's position that Schmukler's lien, if any, is avoidable as a preferential transfer, the Gindi Trust understands that Debtor does not intend to grant Schmukler any adequate protection unless the Court determines that he holds a valid, perfected lien. That appears to be the intent of subparagraph (b) on page 1 of the proposed order, which states (i) adequate protection liens will have "the same extent, validity and priority as their respective pre-petition liens," and (ii) superpriority administrative expense claims shall be "solely against Debtor's estate against which the Secured Creditors may be determined to have allowed secured claims." Dkt. 9 at 23.

17. To avoid confusion regarding the adequate protection, if any, to be granted to Schmukler, the Gindi Trust respectfully requests that the following clarifying change be made to Debtor's proposed order:

- Following the paragraph numbered B.2 on page 5 of the proposed order (Dkt. 9 at 26), which starts with the text, "As adequate protection . . . ," a new paragraph shall be inserted that reads as follows:

  "For the avoidance of doubt, nothing in this order shall constitute a finding or conclusion that Schmucker holds any security interest or lien in the Debtor's property or any property of the estate or that any claim Schmukler may hold is valid and enforceable under Bankruptcy Code section 502. Schmukler shall not be entitled to any Adequate Protection Liens or administrative expense claims on account of any purported liens or security interests unless the Court determines that Schmukler holds valid and perfected security interests in property of the Debtor or of the estate."

5

18.  The Gindi Trust reserves all rights, claims, interests, and arguments under all applicable law and equity that it may have with respect to the relief requested in the Cash Collateral Motion and the other pleadings filed by Debtor in this case, including the right to object to the entry of any final order.  The Gindi Trust further reserves the right to dispute all allegations and arguments made in those pleadings, whether or not such allegations or arguments are referred to in this Limited Objection.  Nothing in this Limited Objection is intended as a waiver of any such rights, claims, interests, and arguments, which are expressly preserved.

### IV.  CONCLUSION

19.  It bears repeating that the Gindi Trust's overriding concerns are uninterrupted patient care and the long-term stability of the facility.  Debtor has lost all right to occupy the Premises and, more importantly, the Gindi Trust's confidence as a partner in safeguarding the wellbeing of patients.  There is, accordingly, no future for Debtor at the Premises.  The Gindi Trust's goal throughout this bankruptcy and whatever may follow will be a swift adjudication of its rights and a safe and efficient transition of the facility to a qualified operator.  It will steadfastly support any relief that can bring about those results and ensure a continuity of care.

January 16, 2026            KTBS LAW LLP

        */s/ Samuel M. Kidder*
Michael L. Tuchin (State Bar No. 150375)
Samuel M. Kidder (State Bar No. 284015)
Eitan Arom (State Bar No. 342703)

*Counsel for Rachel Gindi as Trustee of the JRG Trust #219*

KTBS LAW LLP
1801 CENTURY PARK EAST, TWENTY-SIXTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 1801 Century Park East, Twenty-Sixth Floor, Los Angeles, CA 90067.

A true and correct copy of the foregoing document entitled (*specify*): **LIMITED OBJECTION AND RESERVATION OF RIGHTS IN RESPONSE TO DEBTOR'S CASH COLLATERAL MOTION AND FIRST-DAY DECLARATION** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) January 16, 2026 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) January 16, 2026, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

PERSONAL DELIVERY VIA MESSENGER
The Honorable Barry Russell
U.S. Bankruptcy Court
Roybal Federal Building
Bin outside of Suite 1660
255 E. Temple Street
Los Angeles, CA 90012

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| January 16, 2026 | Apryl C. Bond | /s/ Apryl C. Bond |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

1192591.2

**ADDITIONAL SERVICE INFORMATION (if needed):**

1. **SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

   - **Ron Bender**   rb@lnbyg.com
   - **Leslie A Cohen**   leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;camille@lesliecohenlaw.com
   - **Gregory Kent Jones (TR)**   gjones@sycr.com, smjohnson@sycr.com;C191@ecfcbis.com;cpesis@stradlinglaw.com
   - **Samuel M Kidder**   skidder@ktbslaw.com
   - **Monica Y Kim**   myk@lnbyg.com, myk@ecf.inforuptcy.com
   - **Elan S Levey**   elan.levey@usdoj.gov, usacac.tax@usdoj.gov;caseview.ecf@usdoj.gov;usacac.tax@usdoj.gov
   - **Ron Maroko**   ron.maroko@usdoj.gov
   - **Krikor J Meshefejian**   kjm@lnbyg.com
   - **United States Trustee (LA)**   ustpregion16.la.ecf@usdoj.gov


2. **SERVED BY U.S. MAIL**



3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR E-MAIL**

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.