# Exhibit A

**MUSICK, PEELER & GARRETT LLP**

333 South Hope Street, Suite 2900
Los Angeles, California 90071-3048
Telephone (213) 629-7600
Facsimile (213) 624-1376

Dan Woods (State Bar No. 78638)
 *d.woods@musickpeeler.com*
Daniel J. Taylor (State Bar No. 241404)
 *d.taylor@musickpeeler.com*

Attorneys for Plaintiff
RACHEL GINDI, AS TRUSTEE OF THE JRG TRUST #219

Electronically FILED by
Superior Court of California,
County of Los Angeles
6/20/2025 12:00 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By A. Simmons, Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES, CENTRAL DISTRICT

| | |
|---|---|
| RACHEL GINDI, AS TRUSTEE OF THE JRG TRUST #219,<br><br>              Plaintiff,<br><br>     vs.<br><br>CARE FOR THE ELDERLY, INC.; and DOES 1-10, inclusive,<br><br>              Defendants. | Case No.  25STCV00704<br><br>[Assigned for all Purposes to Hon. Cherol J. Nellon, Dept. 14]<br><br>**NOTICE OF ERRATA RE VERIFIED FIRST AMENDED COMPLAINT**<br><br>Action Filed: January 10, 2025 |

MUSICK, PEELER
& GARRETT LLP

3679108.1

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT Plaintiff Rachel Gindi, as Trustee of The JRG Trust #219, respectfully submits this Notice of Errata regarding the Verified First Amended Complaint for Unlawful Detainer filed by Plaintiff on June 5, 2025 (the "FAC").  At the time the FAC was filed, Plaintiff inadvertently did not attach its 2 exhibits.  Plaintiff filed a notice of errata on June 10, 2025, attaching the FAC with the exhibits.  Defendant contends the verification for that version has the incorrect date. To avoid any dispute, this notice of errata includes the FAC, the exhibits, and a verification with an updated date as requested by Defendant.  Plaintiff has made no changes to any averments of the FAC.

Attached hereto as Exhibit 1 is the FAC including both Exhibits A and B and the new verification.

DATED:  June 19, 2025                    MUSICK, PEELER & GARRETT LLP


                                        By: _____
                                             Daniel J. Taylor
                                             Attorneys for Plaintiff
                                             RACHEL GINDI, AS TRUSTEE OF THE JRG
                                             TRUST #219

# EXHIBIT 1

1  **MUSICK, PEELER & GARRETT LLP**

2        333 South Hope Street, Suite 2900
         Los Angeles, California 90071-3048
3            Telephone (213) 629-7600
             Facsimile (213) 624-1376

4  Dan Woods (State Bar No. 78638)
     *d.woods@musickpeeler.com*
5  Daniel J. Taylor (State Bar No. 241404)
     *d.taylor@musickpeeler.com*
6
   Attorneys for Plaintiff
7  RACHEL GINDI, AS TRUSTEE OF THE JRG TRUST #219

8        **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9           **COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

10

11  RACHEL GINDI, AS TRUSTEE OF THE        Case No. 25STCV00704
    JRG TRUST #219,
12                                          [Assigned for all Purposes to Hon. Cherol J.
                Plaintiff,                  Nellon, Dept. 14]
13
           vs.                             **VERIFIED FIRST AMENDED**
14                                          **COMPLAINT FOR UNLAWFUL**
    CARE FOR THE ELDERLY, INC.; and        **DETAINER**
15  DOES 1-10, inclusive,
                                           **UNLIMITED CIVIL CASE**
16              Defendant.

17                                          Action Filed: January 10, 2025

18

19

20

21

22

23

24

25

26

27

28

MUSICK, PEELER
& GARRETT LLP

3662487.1

FIRST AMENDED COMPLAINT

1    Plaintiff Rachel Gindi, as trustee of the JRG Trust #219 ("Plaintiff") alleges as follows:

2    **<u>INTRODUCTION</u>**

3    1.      JRG Trust #219 is a family trust that is the landlord of the Grand Park

4    Convalescent Hospital (the "Facility"), a skilled nursing facility located at 2312 W. 8th Street, Los

5    Angeles, California, 90057 (the "Premises").  JRG Trust #219 leases the Premises from the JEG

6    Grand Park Trust #231.

7    2.      Rachel Gindi is an individual residing in Los Angeles County, California.  Rachel

8    Gindi, along with her late husband, Jack E. Gindi, were the trustors of the JRG trust #219.  Mr.

9    Gindi was the trustee until he passed in 2007, at which point Rachel Gindi became the successor

10   trustee.  She remains the current trustee of the JRG Trust #219.

11   3.      Defendant Care for the Elderly, Inc. ("CFTE") is a corporation organized and

12   existing under the laws of the State of California with its principal place of business in Los

13   Angeles County, California.

14   4.      CFTE subleased the Premises from Plaintiff and operates the Facility located there.

15   CFTE's sublease has expired, and it has remained in possession of the Premises as a holdover

16   tenant.

17   5.      On May 1, 2025, Plaintiff served a 30-Day Notice-To-Quit requiring CFTE to

18   vacate the premises and comply with its contractual obligations to transfer operations of the

19   Facility to a new tenant.  CFTE has failed to comply.

20   6.      Plaintiff brings this action to recover possession of the Premises and ensure the

21   continuity of care for the residents of the Facility and the continued operation of the Facility

22   during its transfer to a new tenant operator.

23   7.      Plaintiff does not know the true names and capacities of defendants sued herein as

24   DOES 1 through 10, inclusive, and, therefore, sues those defendants by such fictitious names.

25   Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

26   8.      Plaintiff is informed and believes, and based thereon alleges, that each of the

27   defendants are legally responsible in some manner for the occurrences herein alleged, and the

28   violation of Plaintiff's rights as alleged herein were legally caused by such acts.  At all times

MUSICK, PEELER
& GARRETT LLP

3662487.1                                    1

1  mentioned herein, each of the fictitiously named defendants were the agents or employees of each

2  of the other defendants, and in doing the things herein alleged, were acting within the purpose,

3  scope and course of such agency or employment.  CFTE, and DOES 1 through 10, inclusive, shall

4  be collectively referred to herein as "Defendants."

5  <u>**UNLAWFUL DETAINER**</u>

6  9.  On November 15, 1994, JRG Trust #219 and CFTE entered into a written sub-lease

7  agreement, whereby CFTE agreed to lease the Premises and operate the Facility (the "Lease").

8  Under the terms of the Lease, CFTE's tenancy was to last for a term of nine years, with up to four

9  options to renew the term for an additional five years.  A true and correct copy of the Lease is

10  attached hereto as Exhibit A.

11  10.  Section 3 of the Lease provides that base rent shall be $36,500 per month,

12  increased by two percent of the prior's year's rental for the full term of this lease.  The most recent

13  monthly rent under the Lease was $67,422.07.  Section 3 further provides for additional rent of

14  50% of all operating profit derived from the operation of the Facility.

15  11.  Section 10 of the Lease provides that all business personal property at the Facility,

16  such as furniture and equipment, are the property of Plaintiff and that CFTE, at its expense, must

17  maintain and the furnishings of the facility in operating condition.

18  12.  Section 11 of the Lease provides that the Premises shall be used for the purpose of

19  operating the Facility, or similar facility, and for no other purpose.  It required CFTE to "conform

20  to all laws and ordinances, and all regulations of any government body pertaining to it" and that

21  "no action, nuisances, nor an anything which will injure the reputation of the premises shall be

22  done or permitted."

23  13.  Section 13 of the Lease provides, among other things, that CFTE shall "promptly

24  and properly observe and comply with all present and future orders, regulations, directions, rules,

25  laws, ordinances and requirements of all governmental authorities… and shall do all things

26  required . . . to maintain all permits and licenses authorizing the operation for a convalescent

27  hospital on the [Premises]."

28  14.  Section 19 of the Lease provides that in the event "Lessee shall cause or permit

MUSICK, PEELER
& GARRETT LLP

patients to be transferred to other facilities without good cause," or if "Lessee shall default in the performance of any other obligation required to be performed by the Lessee," Plaintiff may terminate the Lease, take over operation of the Facility, sublet the Premises, or pursue any other remedies authorized or permitted by law.

15.     Section 20 of the Lease provides that "In the event of any breach or threatened breach by Lessee of any of the provisions contained in this Lease, Lessor shall be entitled to enjoin such breach or threatened breach. . . ."

16.     Section 23 of the Lease provides that upon termination, CFTE:

a.     "shall turn over to Lessor the entire operation of the nursing home intact without discharge of any patients";

b.     "Lessee shall cooperate with Lessor (or Lessor's sublessee or assignee or agent) to accomplish the foregoing";

c.     "shall at once surrender and deliver up possession of the premises and any additions thereto as well as ownership and possession of all furniture, fixtures, equipment, and personal property used in said premises or in connection with the operation of the nursing home (or any other business) on said premises"; and

d.     "Lessor shall not pay anything to Lessee for any of the furniture, fixtures, and equipment which Lessee is herein required to turn over to Lessor."

17.     Section 27 of the Lease provides that the prevailing party in any action brought "for the purpose of determining or enforcing the right of either party hereunder" shall be entitled to recover from the other party all costs and expenses incurred, including reasonable attorney fees. Section 27 further provides that, "Time is of the essence of each term and provision of this lease."

18.     CFTE exercised each of its four options to extend the term of Lease for additional five-year terms, totaling an additional twenty years, but at no point have the parties modified or amended the terms of the Lease.  Thus, in accordance with Section 2 of the Lease, its term expired on November 30, 2023.  Section 24 of the Lease contains a holdover provision, which provides:

> In the event the Lessee holds over or remains in possession of the demised premises after the expiration of the term of this lease, such holding over shall not be deemed to operate as any renewal or extension of the term of this lease, and

shall create a tenancy from month to month upon the same conditions as provided herein, which may at any time be terminated either by the Lessor or the Lessee giving the other 30 days' written notice of such termination.

Since the expiration of the Lease term, CFTE has remained in possession of the premises on a month-to-month basis in accordance with this provision.

19.     On May 1, 2025, Plaintiff served CFTE, and all other occupants in possession, with a 30-Day Notice to Quit (the "Notice") pursuant to Civil Code Section 1946, which required that "within 30 days after service of this notice, CFTE must vacate and deliver possession of the Facility to Landlord."  A true and correct copy of the Notice is attached hereto as Exhibit B.

20.     In addition, the Notice provided that, "CFTE must surrender the Facility with its personal property and operations intact. Section 10 of the Lease provides that all personal property at the Facility, such as furniture and equipment, are the property of Landlord and that CFTE must turn over the property when it vacates the premises. Further, Section 23 of the Lease provides that upon termination, CFTE "shall turn over to Lessor the entire operation of the nursing home intact without discharge of any patients" and that upon termination, CFTE "shall at once surrender and deliver up possession of the premises and any additions thereto as well as ownership and possession of all furniture, fixtures, equipment, and personal property used in said premises or in connection with the operation of the nursing home (or any other business) on said premises." Also, "Lessor shall not pay anything to Lessee for any of the furniture, fixtures, and equipment which Lessee is herein required to turn over to Lessor."

21.     The Notice further provided that, "CFTE must further cooperate with all applicable laws and regulations regarding the transfer of operations at the Facility to a new tenant in accordance with the Lease. Section 11 of the Lease provides that the Premises shall be used for the purpose of operating a convalescent hospital, or similar facility, and for no other purpose. CFTE is required to "conform to all laws and ordinances, and all regulations of any government body pertaining to it" and agreed that "no action, nuisances, nor an anything which will injure the reputation of the premises shall be done or permitted."

22.     CFTE failed and refused to deliver possession of the Premises to Plaintiff before the expiration of the Notice.  CFTE remains in possession and has refused to surrender possession

of the Premises, the personal property of the Facility, or to cooperate with the transition of the Facility as required by the Lease and the Notice.

23.     Plaintiff is entitled to immediate possession of the Premises.

24.     Defendants' actions risk the continuity of care for patients at the Facility and their actions may force patients to be transferred to other facilities without good cause, in further violation of the Lease and the obligations set forth in the Notice.  Because of that, Defendants' actions will cause irreparable injury to residents of the Facility and the reputation of the Premises and Facility.

25.     Plaintiff is further entitled to holdover damages in the amount of $2,247.40 per day.

WHEREFORE, Plaintiff prays for judgment as follows:

1.     For a judgment for possession of the Premises and forfeiting CFTE's interest in the Premises under the Lease;

2.     For interim relief appointing a receiver pursuant to Code of Civil Procedure Section 564, subsection (b)(7) to ensure the continuity of care for the residents of the Facility and the continued operation of the Facility during its transfer to a new tenant operator;

3.     For holdover damages according to proof;

4.     For its costs of suit herein incurred, including reasonable attorney fees and disbursements pursuant to the Lease and Civil Code section 1717; and

5.     For such other and further relief as the Court may deem just and proper.


DATED:  June 10, 2025                              MUSICK, PEELER & GARRETT LLP


                                                  By: _____
                                                      Daniel J. Taylor
                                                      Attorneys for Plaintiff Rachel Gindi, as trustee of
                                                      the JRG Trust #219

**MUSICK, PEELER
& GARRETT LLP**

## **VERIFICATION**

I, Rachel Gindi, declare:

I am the trustee of the JRG Trust #219 and I am authorized to make this verification on its behalf. I have read the foregoing VERIFIED FIRST AMENDED COMPLAINT FOR UNLAWFUL DETAINER and know its contents. I am informed and believe that the matters stated therein are true to the best of my knowledge.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 18th day of June, 2025, in Los Angeles, California.

_____

Rachel Gindi, Trustee of the JRG Trust #219

MUSICK, PEELER
& GARRETT LLP

# EXHIBIT A

COPY

*file 390 —*
*Lease file*

## LEASE

Lessor:  JRG Trust #219

Re:  Grand Park Convalescent Hospital

Lessee:  Care For The Elderly, Inc.

NOVEMBER 15, 1994

Page

| | | |
|---|---|---|
| 1. | Premises | 1 |
| 2. | Term | 1 |
| 3. | Rent | 1 |
| 4. | Security | 2 |
| 5. | Taxes and Assessments | 2 |
| 6. | Payment of Utility Charges | 2 |
| 7. | Interest and Fees for Advances & Delinquencies | 3 |
| 8. | Insurances | 3 |
| 9. | Acceptance of Demised Premises | 4 |
| 10. | Furniture, Furnishings, Fixtures and Equipment | 5 |
| 11. | Use of Premises | 5 |
| 12. | Changes Alterations and Additions | 5 |
| 13. | Compliance with Laws and Regulations | 6 |
| 14. | Repairs, Replacement and Destruction | 6 |
| 15. | Covenants Against Liens | 7 |
| 16. | Estoppel Certificates | 8 |
| 17. | Subordination of Lease | 8 |
| 18. | Assignment and Subletting | 8 |
| 19. | Remedies on Default | 9 |
| 20. | Waiver or Breach | 11 |
| 21. | Indemnity to Lessor | 11 |
| 22. | Condemnation | 12 |
| 23. | Delivery of Possession Upon Termination | 12 |
| 24. | Holding Over | 13 |
| 25. | Financial Statements | 13 |
| 26. | Notices | 13 |
| 27. | Miscellaneous Provisions | 14 |



## CONVALESCENT HOSPITAL LEASE

THIS INDENTURE OF LEASE, made and executed November 18, 1994, by and between JRG Trust #219 (Re#390), (hereinafter called "Lessor") and  Care For the Elderly, Inc., a California corporation d/b/a Grand Park Convalescent Hospital (hereinafter called "Lessee").  It is recognized that the premises are owned by JEG Grand Park Trust #231 and are leased to JRG Trust #219, and are hereby subleased to Care for the Elderly.

    1.  <u>Premises</u>

For and in consideration of the rentals herein provided and the performance of the covenants herein contained, Lessor does hereby lease, demise and rent unto Lessee all that certain real property commonly known as Grand Park Convalescent Hospital located at 2312 W. 8th Street, Los Angeles, Calif.  Said premises are improved with a convalescent hospital containing 151 beds.  The premises are legally described as follows:

    Lots 1,2,3,20,21 & 22 of Resubdivision of Monterey Tract Book 12 Page 78 of Miscellaneous Records, in the office of the County Recorder of Los Angeles.

    2.  <u>Term</u>

The lease is for 9 years, commencing December 1, 1994, and continuing to November 30, 2003.  Lessee shall have four consecutive options to extend each for five (5) year periods on the same conditions, rentals, etc.  If all 4 options are exercised, it will be as though this lease had originally been for 29 years. Each option may only be exercised at any time after 6 months prior to the expiration of the expiring term, and may be exercised in writing at any time after commencement of the 6 months period.  These options are personal and may only be exercised by Barry Kohn or Tova Kohn individually on behalf of Lessee.

It is recognized that the Lessor herein has 4 similar options to renew for the same periods.  In the event Lessor herein does not, for any reason, exercise any of the said options herein shall have the right to substitute the Owner as Lessor herein and exercise the options directly with the Owner so that theLessor of this Lease shall thereafter be the Lessor of the Master Lease executed 11/15/94 between JEG Grand Park Trust #231 as Lessor and JRG Trust #219 as Lessee.

    3.  <u>Rent</u>

As rent for the demised premises, Lessor shall pay to Lessee the total amounts as provided in paragraphs 3(a) and 3(b) following.

-1-



Additionally, any amounts which Lessor may advance to meet Lessee's obligations hereunder shall be considered as rent due.

### (a) Base Rent

Lessee shall pay to Lessor as the base rent for the demised premises the sum of $36,500 per month payable monthly in advance commencing December 1, 1994 and continuing through February 1995. Commencing March 1, 1995 and yearly thereafter, the $36,500 rent shall be increased by two percent (2%) of the prior year's rental for the balance of the term of this lease and any extension thereof.

### (b) Additional Rent

In addition to the base rent reserved in paragraph 3(a) above, Lessee shall pay to Lessor 50% of all operating profit derived from the operation of the demised premises, to be determined and paid as follows: On or before March 31st of each year, Lessee shall deliver to Lessor an operating statement showing all income and expenses incurred in connection with the operation of the facility for the prior calendar year. For the purpose of this calculation there shall not be any compensation paid to Lessee or any of its officers allowed as part of such expenses, however, all base rents paid monthly shall be deducted as expense. One half (50%) of the profit as determined per the said operating statement (less any amounts paid with the interim statement) shall be paid as Additional Rent for the prior calendar year within 30 days from date of said statement. An 6 month interim statement shall be submitted by September along with payment of 50% of the profit shown for the first 6 months of each year. There are outstanding amounts which may be payable to Lessor for the period prior to the commencement date of this lease, which Lessee will pay to Lessor as funds are available.

### 4. Security Deposit

Lessor and Lessee acknowledge that there is no security deposit or prepaid rent in connection with this Lease.

### 5. Taxes and Assessments

Lessee shall pay at least 10 days prior to the delinquency date, all real estate and personal property taxes and all general and special assessments which shall, during the term of this lease, be payable or be assessed against the demised premises and improvements and/or personal property thereon. If Lessor finds that taxes are unpaid (after delinquency date), then Lessor may pay all taxes, interest, and penalties, and Lessee shall reimburse to Lessor all such advances plus a 10% fee plus interest at 10% per annum on all sums advanced. All such advances shall be repaid on the next rental due date and shall be treated as additional rent due.                    -2-

### 6.   Payment of Utility Charges

Lessee shall pay and discharge all electric, gas, water, sewer, telephone and other public utility charges arising out of or in any manner connected with the premises herein demised.

### 7.   Interest and Fees for Advances & Delinquencies

Lessee agrees that in case Lessor shall, in accordance with any of the provisions of this lease: (a) pay any sum of money; or (b) do any act which requires the payment of any money; or (c) incur any expense whatsoever, by reason of the failure of Lessee to perform any of its covenants herein contained, then the sum or sums so paid by Lessor , together with a service fee of 10% of all such sums, plus interest on sums paid by Lessor shall be added to the next installment of rent becoming due hereunder, and shall be collectible as additional rent in the same manner and with the same remedies as if it had been originally reserved as rent. Lessee shall pay interest to Lessor at the rate of 10% per annum (from the date it was due) on any payment required to be made by Lessee which is not made within 5 days of the date it is due.

### 8.   Insurances

#### (a)   Public Liability Insurance

Lessee further agrees to take out and keep in force during the life hereof, at Lessee's sole expense public liability and mal-practice insurance in the amount of $2,000,000, plus an "umbrella" liability policy of an additional $3,000,000, to indemnify Lessor and Owner against the claim of one or more persons, and property damage insurance in the amount of $100,000 to protect Lessor and Owner against liability to the public for property damage. Said amounts shall be increased upon request of lessor provided the amount of coverage requested is not unreasonable. All such insurance shall be with solvent companies approved by Lessor, and shall be written in such manner as to protect the interests of Lessor, Owner, and Lessee.  Lessee shall supply Lessor and Owner with copy of such insurance policy or a Certificate of the insurance company assuring such insurance is in force and Lessee hereby agrees that the insurance and Certificate shall be in such form and substance as shall be acceptable to Lessor, and such insurance shall not be cancelable until Lessor has been given thirty (30) days written notice of such cancellation by the insurance company. Lessee further agrees to hold Lessor harmless in the event that any liability or malpractice claim is made against Lessor or Owner.

#### (b)   Fire Insurance

Lessee agrees that it will, at all times during the term of this

-3-



lease or any extension thereof, at its own expense, keep in effect upon all improvements, furniture, fixtures and equipment, fire insurance with extended coverage and vandalism endorsement and depreciation clause.  All such insurance shall be in the amount and in form and substance and with an insurance company as shall be reasonably satisfactory to and agreed to by Lessor and anyone holding an encumbrance on the property, in an amount equal to the insurable value of such improvements.  Said policy of insurance shall provide that payment for any losses covered under or by said policy or policies of insurance shall be made jointly to Lessor and Lessee and such parties as Lessor may direct. Certificates or copies of insurance policies evidencing the insurance described herein shall be delivered to Lessor or Owner at least ten (10) days prior to the commencement of the term provided for therein.

    (c)  <u>Owner and Lessor To Be Named Insured</u>

Owner and Lessor and any of Lessor's designees shall be named as additional insured on all policies of insurance required under the terms of this lease. Insurance should be from company qualified to do business in the state of California, with a general policy holders' rating of not less than "A", and a financial rating of not less than Class XIII. Policy must contain a provision stating that the policy cannot be cancelled, changed or amended without at least 30 days prior written notice to Lessor. All public liability and property damage policies shall contain a cross-liability endorsement to the effect that Owner and Lessor and Lessor's designees (although named insured) shall nevertheless be entitled to recover under said policies for any loss occasioned to them by reason of Lessee's negligence.

    (d)  <u>Right to Insurance</u>

In the event Lessee fails to obtain any insurance  as provided in this Lease, Lessor may, at its option, terminate this Lease after thirty days notice. Without affecting the foregoing right, Lessor may obtain said insurance and the cost thereof shall be paid by Lessee as additional rental with the  first payment of rent which is due subsequent to Lessor's incurring such cost, along with a fee of 10% of said  cost to be paid to Lessor as a service fee, and interest on said cost at 10% per annum.

    9.  <u>Acceptance of Demised Premises</u>

Lessee agrees to accept the premises as is and maintain the premises in good, clean and pleasing condition, so as to attract patients to this facility.  No claim shall be made against Lessor for any damages or defects in premises, whether or not due to latent or patent defects.  Lessor shall not be called upon to make any repairs, replacements, or improvements to the premises during the entire term of this lease, or any extensions or renewals thereof.        -4-



### 10. <u>Furniture, Furnishing, Fixtures and Equipment</u>

Lessee hereby acknowledges that all furniture, furnishings and fixtures and equipment, are the property of the Lessor, and that Lessor shall have no responsibility to Lessee concerning such furniture, etc. Lessee, at its sole cost and expense, shall keep the facility fully furnished and in operating condition. All furniture, furnishings and equipment shall be replaced by Lessee as needed and shall be kept in good condition and repair at all times, and all such replacements shall belong to Lessor and shall be free of any liens.

### 11. <u>Use of Premises</u>

The Lessee agrees to use the demised premises for the purpose of operating a convalescent hospital or like or similar facility, and for no other purpose without the written consent of the Lessor, such consent not to be unreasonably withheld. The Lessee shall at all times maintain the same in a sanitary and orderly condition, and conform to all laws and ordinances, and all regulations of any government body pertaining to it, and shall not do or permit any act or omission which will cause an increase in the fire hazard in said premises. No action, nuisances, nor anything which will injure the reputation of the premises shall be done or permitted. Lessor shall not be liable for any damage occasioned by failure to keep the premises in repair or for any action, occurrence, or inaction.

### 12. <u>Changes, Alterations and Additions</u>

No structural changes, alterations or additions shall be made by the Lessee to the demised premises without the written consent of the Lessor first had and obtained, and said structural changes, alterations or additions made with the said consent of the Lessor, shall be and remain the property of the Lessor, and Lessor shall have the right to require the Lessee to remove any of these changes to the demised premises, at Lessee's expense, at the termination of the lease, unless otherwise agreed between Lessor and Lessee at the time said changes, etc., are made. Any floor covering, and any cemented or tacked down carpeting and all other items attached to floors, ceilings, or walls by nails, screws or otherwise, shall be deemed "additions" as used in this paragraph. If alternations or additions are removed upon expiration of the Term, Lessee must repair any damage caused by such removal.

### 13. <u>Compliance with Laws and Regulations</u>

Lessee shall, at all times, indemnify and forever save the Lessor and Lessor's agents, licensees, successors and assigns harmless from and against all fines, penalties, loss, damage, costs,

-5-



expense, attorneys' fees and other charges imposed regarding the demised premises or resulting from any violations at, on or about the demised premises or arising from Lessee's use or occupancy of the premises.  Lessee shall, at its own cost and expense, promptly and properly observe and comply with all present and future orders, regulations, directions, rules, laws, ordinances and requirements of all governmental authorities regarding the use or occupancy of the premises and shall do all things required (including any additions, repairs, replacements, or structural changes) to maintain all permits and licenses authorizing the operation of a convalescent hospital on the demised premises.  If Lessee should fail to accomplish the requirements promptly and diligently, Lessor may do same and Lessee will reimburse to Lessor all costs incurred plus 10% service fee plus interest at 10% per annum on all sums paid.  All such items shall be repaid to Lessor on the next rental due date and shall be treated as additional rent due, unless this lease had been terminated, in which event all such items shall be due and paid to Lessor immediately on demand of Lessor.

Lessee shall permit Lessor and its agents to enter in and upon said premises at all reasonable times, upon reasonable notice, for the purpose of inspecting the same, or for the purpose of posting notices of non-liability for alterations, additions or repairs; and shall permit Lessor, at any time within 90 days prior to the expiration of this lease, to place upon said premises any usual or ordinary "to let" or "to lease" signs.

### 14.   Repairs, Replacements and Destruction

(a).  Lessee shall throughout the term of this lease or any extension thereof, at its own cost and expense, maintain in good order, condition and repair, the interior and exterior of the building including, but not limited to, the roof, exterior walls, all plumbing, heating, and electrical, and all on-site and off-site improvements, and shall maintain in good order, condition and repair, and replace as necessary all of the equipment and fixtures in or about the demised premises.

(b).  Lessor or Owner shall not be liable to Lessee or to any other person whatsoever for any damage occasioned by plumbing, gas, water, steam, sprinkler, or other pipe and sewerage system or by the bursting, running or leaking of any tank, washstand, closet or  waste or other pipes, in or about the premises or for damage occasioned by electricity or by water being upon or coming through the roof or otherwise, or for any damage arising from any cause in or about the demised premises.

(c).  In the event of partial or total destruction of the said premises during the term from any cause (including but not

6



limited to Acts of God, fire, or earthquake), Lessee shall give immediate advice thereof to Lessor and Lessee shall forthwith repair or replace the same at its own expense.  Such partial or total destruction shall in no way annul or void this lease, and there shall be no reduction or abatement of rent.

(d). In the event of any damage or destruction as hereinabove referred to, any insurance money received by or paid to the Lessor or Lessee by reason thereof shall be applied to such costs of repairing, restoration or rebuilding as herein provided. However, Lessee shall make such repairs or replacements irrespective of whether or not any insurance monies are payable or paid.

(e). If Lessee shall fail to make repairs and replacements as hereby required, and shall fail to commence to so repair after ten (10) days notice in writing from Lessor, Lessor shall have the right to make such repairs or replacements at Lessor's expense, and to pay for the same; however, any sums so paid for repairs or replacements shall be collectible from Lessee as additional rent hereunder along with a fee of 10% of such sums plus interest thereon at 10% per annum, unless this lease had been terminated, in which event all such items (including 10% fee plus interest) shall be due and paid to Lessor immediately on demand of Lessor.

(f). Lessee hereby waives all right under Sections 1941 and 1942 of the Civil Code of the State of California, including without limitation, the right to make repairs at the expense of Lessor.

### 15.  Covenants Against Liens

Lessee covenants and agrees that it will not during the term hereof, suffer or permit any lien to be attached to or upon the demised premises by reason of any act or omission on the part of Lessee, and hereby agrees to hold and save Lessor harmless from and against any such lien, or claim of lien.  In the event any such lien does so attach, and is not released within 15 days after notice to Lessee thereof or if Lessee has not indemnified Lessor against such lien within said 15 days' period, Lessor in its sole discretion may pay and discharge the same and relieve the demised premises therefrom, and Lessee agrees to immediately repay and reimburse Lessor upon demand for the amount so paid by Lessor, together with interest at the rate of 10% per annum until repaid, plus 10% of amount so paid as a service fee.

### 16.  Estoppel Certificates

Lessee shall, at any time and from time to time upon not less than 10 days' prior request by Lessor, execute, acknowledge and




deliver to Lessor a statement in writing certifying that this lease is unmodified and in full force and effect (or if there have been modifications, that the same is in full force and effect as modified and stating the modifications) and, if so, the dates to which the fixed rent and any other charges have been paid, it being intended that any such statement delivered pursuant to this paragraph may be relied upon by any prospective purchaser or encumbrance (including assignees) of the premises or of this Lease. Certificate must also contain (1) commencement and expiration dates of Lease; (2) all conditions to be performed by Lessor have been performed; (3) Lessee has no defenses or offsets against Lessor; and (4) such other matters as Lessor may request.

### 17.   Subordination of Lease

The lease and the Leasehold estate created hereby are, and shall be, subject and subordinate to any encumbrances now covering the demised premises or hereafter placed on the demised premises. Upon written request by Lessor, Lessee shall execute documents as may be presented by Lessor for the purpose of subordinating its rights under this Lease to the lien of any mortgage or deed of trust now or hereafter placed against the Premises.   Should Lessor default in making the payments on said encumbrances, Lessee may make said payments and set off said sum against the monies due and payable to Lessor hereunder.

### 18.   Assignment and Subletting

Lessor expressly grants to Lessee the right to sublet a portion or grant concessions to sub-lessees of portions of the demised premises for uses incidental or necessary to the operation of the convalescent hospital, such as x-ray, laboratory, pharmacy, and the like.   Except as authorized herein, the Lessee shall not assign, mortgage, or pledge this lease, or any rights hereunder, voluntarily or by operation of law, or sublet the premises or any part thereof, nor permit the use of the leased premises, except as above provided, by any other person, or persons other than the Lessee or agents or servants of Lessee, without first obtaining the written consent of Lessor.   Consent of Lessor to assignment of this lease shall not be unreasonably withheld.   Any merger, consolidation, liquidation, or change in ownership of 40%, or more, of the presently outstanding stock of Lessee (except to a family member) shall be deemed an assignment.   It is agreed that any and all leases for subtenancies executed by Lessee shall be subject to the terms of the lease, and a copy of this lease shall be submitted to the sub-tenants in all cases.   In the event of any unauthorized sub-lease or assignment, this Lease shall be subject to termination at the option of Lessor.   Any sublease or assignment of this lease, even though approved by Lessor, shall not relieve or release Lessee from liability hereunder as though





Lessee had remained as the Lessee herein. If there is an unap-
proved sublet or assignment, such subletting or assignment is
null or void.

19.   Remedies On Default

In the event that:
(a).   Lessee shall fail to pay any installment of rent,
taxes or assessments when and as any of the same shall become
due, as herein provided; or

(b).   Lessee shall abandon or vacate the demised premises
for five (5) or more consecutive days; or

(c). Lessee shall cause or permit patients to be transferred
to other facilities without good cause; or

(d). Lessee's license to operate a convalescent hospital
shall be revoked; or

(e).   Lessee shall default in the performance of any other
obligation required to be performed by Lessee, and such default
shall continue for a period of 15 days after written notice from
Lessor specifying such default, unless Lessee has proceeded
promptly and pursues diligently the curing of such default but
cannot (through no fault of Lessee) complete the curing of such
default within a period of 15 days; or

(f).   Lessee shall file a petition in bankruptcy, or shall
be adjudicated a bankrupt, or make an assignment for the benefit
of creditors, or if Lessee files a petition for reorganization or
adjustment of its obligations under the Bankruptcy Act, or any
other existing or future statute, or shall approve any such
reorganization or adjustment, or if any attachment, execution or
other legal process is levied against the business or property of
Lessee, or if a receiver is appointed against, for or upon Les-
see's business or assets, or a part thereof, and Lessee does not
cause the said act or proceeding above mentioned to be discharged
within 30 days.

In any or each of above events Lessor, in addition to any other
remedies authorized or permitted by this lease and/or by law, may
at its option:

(i)   Terminate this lease; and/or

(ii) With or without terminating this lease, enter in
and upon the demised premises and take over the operation of the
convalescent hospital for Lessee's or Lessor's account (at the
option of Lessor); and/or



(iv)  Without terminating this lease, and without releasing Lessee or otherwise affecting the liability of Lessee to pay the full rental reserved hereunder or from the performance of any other of the covenants, conditions and agreements hereof, sublet or sublease the demised premises or any part thereof for Lessee's account, either in the name of Lessee or of Lessor, and upon such terms and for such rental as Lessor in its sole discretion may deem advisable, and in that event Lessor, as the agent attorney- in-fact of Lessee, may make such repairs in and about the demised premises (for the account of Lessee) as may be reasonable necessary for such subletting, and Lessee agrees to pay the amount thereof.  Lessor may then collect any and all such rentals actually received by Lessor and apply them to the payment of: first, any indebtedness other than rent due hereunder from Lessee to Lessor; and second, rent already due and unpaid; and the residue, if any, shall be held and applied by the Lessor to the payment of the rent yet to become due, and Lessor shall be entitled to recover from Lessee monthly or otherwise, at the option of Lessor, an amount equal to the obligations of the Lessee hereunder over the monthly rental received by Lessor upon such subletting after deducting the reasonable and customary expenses of said subletting and other sums herein provided to be deducted; and/or

(v)  Terminate this lease and hold Lessee immediately liable for damages.  In the event of such termination Lessor shall be entitled to recover from Lessee all amounts due to the date of such termination, and also the worth at the time of such termination of the excess of the total amount of the average monthly rental reserved in this lease for the balance of the term over the then reasonable rental value of the demised premises for the same period, but Lessor shall not be liable to Lessee for any excess rental received from any re-letting.

Lessee hereby expressly waives, so far as permitted by law, the service of any notice of intention to enter or re-enter provided for in any statute, and Lessee, for and on behalf of itself and all persons claiming through or under Lessee also waives any and all right of redemption or re-entry or repossession or to restore the operation of this Lease in case of entry, re- entry or repossession by Lessor or in the case of any termination of this Lease.

20.  Waiver or Breach

(a). In the event of any breach or threatened breach by Lessee of any of the provisions contained in this Lease,  Lessor shall be entitled to enjoin such breach or threatened breach and shall have  the right to invoke any right or remedy allowed in this Lease or at law or in equity or otherwise as though entry,

10



re-entry, summary proceedings, and other remedies were not pro-
vided for in this Lease.

(b). Each right or remedy of Lessor or Lessee provided for
in this lease shall be cumulative and shall be in addition to
every other right or remedy provided for in this Lease or now or
hereafter existing at law or in equity, and the exercise or the
beginning of the exercise of any one or more of the rights or
remedies provided for in this Lease or now or hereafter existing
at law or in equity shall not preclude the simultaneous or later
exercise by Lessor or Lessee of any other rights or remedies.

(c). No failure by Lessor to insist upon a strict perform-
ance of any provision of this Lease or to exercise any right or
remedy consequent upon a breach thereof, and no acceptance by
Lessor of full or partial rent during the continuance of any such
breach, shall constitute a waiver of any such breach or of such
provision.  No provision of this Lease and no breach thereof
shall be waived, altered or modified except by a written instru-
ment. No waiver of any breach shall effect or alter this Lease,
but each and every provision of this Lease shall continue in full
force and effect with respect to any other then existing  or
subsequent breach thereof.

21.  <u>Indemnity to Lessor and Owner</u>
Lessee hereby covenants and agrees at all times to indemnify and
save Owner and Lessor and Lessor's agents, licensees, successors
and assigns harmless against any and claims and liabilities
whatsoever, to any person or persons, arising out of the occupan-
cy, use or misuse of said demised premises by Lessee, its repre-
sentatives, agents and employees, or any other persons, holding
under Lessee.

22.  <u>Condemnation</u>

If any part of the premises shall be condemned or otherwise taken
for a public or quasi-public use, and a part thereof remains
which is susceptible of occupation hereunder, this lease shall,
as to the part so taken, terminate as of the date title shall
vest in the condemner, and the rent payable hereunder shall be
adjusted on a "usable bed" basis so that the Lessee shall be
required to pay for the remainder of the term only such portion
of the reserved rent, as the number of usable beds remaining
after the condemnation bears to the total number of usable beds
at the date of condemnation.  If all of the demised premises, or
such part thereof be taken or condemned so that there does not
remain a portion of the premises remaining after condemnation
susceptible to an operation of at least 59 beds, Lessee may elect
to terminate the lease.  If a part or all the demised premises be
taken or  condemned, all compensation applicable to the premises

-10-

(11)



as well as the operation of a nursing home thereon, which may be awarded upon such condemnation or taking shall go to the Lessor, and the Lessee shall have no claim thereto, and all damages awarded for any such taking shall belong to Lessor, including damages, if any, which may be awarded as compensation for diminution in value of leasehold or of the fee.  The Lessee hereby irrevocably assigns and transfers to the Lessor any right to compensation or damages to which Lessee may become entitled during the term hereof by reason of condemnation of all, or part, of the demised premises. However, it is agreed that Lessee shall have the right to retain any Loss of Profit which Lessee can collect directly from the condemner.

### 23.  Delivery of Possession Upon Termination

Upon termination, if requested by Lessor, Lessee shall turn over to Lessor the entire operation of the nursing home intact without discharge of any patients.  In such event, Lessor shall pay to Lessee the cost to Lessee of all food, laundry and other supplies that Lessor requests Lessee to leave, and Lessee shall cooperate with Lessor (or Lessor's sublessee or assignee or agent) to accomplish the foregoing.  Lessor shall also have the right to use the name under which the nursing home is then operating.

Upon the termination of this Lease, whether by reason of lapse of time, cancellation, forfeiture or otherwise, the Lessee shall at once surrender and deliver up possession of the premises and any additions thereto as well as ownership and possession of all furniture, fixtures, equipment, and personal property used in said premises or in connection with the operation of the nursing home (or any other business) on said premises.  Lessor shall not pay anything to Lessee for any of the furniture, fixtures, and equipment which Lessee is herein required to turn over to Lessor, it being agreed that Lessee has received full consideration for same by Lessor entering into this Lease. If possession is not immediately surrendered, Lessor, with or without process of law, may re-enter and repossess the premises and may remove therefrom with such force as may be necessary, all persons and property without being deemed guilty of any unlawful acts and without prejudice to any other remedy available to Lessor.

### 24.  Holding Over

In the event the Lessee holds over or remains in possession of the demised premises after the expiration of the term of this lease, such holding over shall not be deemed to operate as any renewal or extension of the term of this lease, and shall create a tenancy from month to month upon the same conditions as provided herein, which may at any time be terminated either by the Lessor or the Lessee giving the other 30 days' written notice of

-II-
12



such termination. Rent payable during any such holdover period shall be the rent reserved in paragraph 3.

### 25.    Financial Statements

Lessee hereby covenants and agrees to furnish to Lessor, upon its request, annually, not later than 90 days after the close of Lessee's fiscal year, financial statements prepared by a certified public accountant consisting of a balance sheet, an income statement and a statement of surplus for each fiscal year, all prepared in accordance with generally accepted accounting principles applied on a consistent basis.

If, in connection with any financing of the premises, a loan broker or Lender request any statements in addition to the financial statements referred to in the preceding paragraph, Lessee agrees that it will cause its officers, directors and shareholders to furnish to Lessor, upon its request, or alternatively to such loan broker or lender, copies of individual income tax returns filed with the federal government for a period not to exceed the 3 years immediately preceding such request, as well as operating statements of any business similar to that of Lessee in which the officers, directors or shareholders of Lessee shall have been engaged as officers, directors, lessees, partners or sole proprietors in such similar business.

### 26.    Notices

Any notice required to be given hereunder or which either party hereto may desire to give to the other shall be in writing.  Such notice may be given by mailing the same by United States mail, Registered or Certified, Return Receipt Requested, postage prepaid, addressed to Lessor at 150 South El Camino Drive, Suite 106, Beverly Hills, California  90212, and to Lessee at the demised premises, or to such other address as the respective parties may from time to time designate by notice given in the manner provided in this paragraph and such notice shall be deemed complete 72 hours after the mailing of such notice, or upon delivery of same if personally delivered.

### 27.    Miscellaneous Provisions

Each of the provisions, covenants and conditions of this lease shall extend to and bind and inure to the benefit of the heirs, executors, administrators, successors and assigns of the respective parties.

Whenever the singular is used in this lease and when required by the context, the same shall include the plural, and the masculine gender shall include the feminine and neuter genders, and the

-12-
13




word "person" shall include corporation, firm or association. If there be more than one lessee, the obligations imposed under this lease upon Lessee shall be joint and several.

Lessee represents and warrants that it is a corporation qualified to do business in California, and has a resolution of its Board of Directors authorizing entering into this lease. Lessee further warrants that it will maintain good standing throughout the term of this lease.

The marginal headings or titles to the paragraphs of this lease are not a part of this lease and shall have no effect upon the construction or interpretation of any part of this lease.

This instrument contains all of the agreements and conditions made between the parties to this lease and may not be modified orally or in any other manner than by an agreement in writing signed by all parties to this lease or their respective successors in interest.

In the event that any action or proceedings shall be brought for the purpose of determining or enforcing the right of either party hereunder, the party prevailing shall be entitled to recover from the other party all costs and expenses reasonably incurred in connection with such action or proceeding, including reasonable attorney's fees.

Time is of the essence of each term and provision of this lease.

    IN WITNESS WHEREOF, the parties hereto have executed this Convalescent Hospital Lease on the dates and at the places shown opposite their names below.

LESSOR :                          JRG Trust #219 (Re#390)

                                  By: _____
                                      Jack E. Gindi, Trustee
Executed on 11/15/94
1994, at Los Angeles, Calif.


LESSEE :                          Care for the Elderly, Inc.
                                  a California corporation

                                  By: _____
                                      President
Executed on 11/15/94
1994, at Los Angeles, Calif.

-13-
14

# EXHIBIT B

# MusickPeeler

### ATTORNEYS AT LAW

DANIEL J. TAYLOR
d.taylor@musickpeeler.com
(213) 629-7716

333 SOUTH HOPE STREET, SUITE 2900
LOS ANGELES, CALIFORNIA 90071-3048

TELEPHONE:  (213) 629-7600
FACSIMILE:  (213) 624-1376
WWW.MUSICKPEELER.COM

LOS ANGELES
ORANGE COUNTY
SAN DIEGO
SAN FRANCISCO
VENTURA COUNTY

FILE NO.: 46493.001

May 1, 2025

**<u>VIA PERSONAL DELIVERY AND U.S. MAIL</u>**

Care for the Elderly, Inc.
Attn. Barry Kohn
2312 W. 8th Street
Los Angeles, California 90057

<u>**30-DAY NOTICE TO QUIT**</u>

Dear Mr. Kohn, Care for the Elderly, Inc. ("**CFTE**"), and All Other Occupants-in-Possession:

CFTE is the tenant under a lease agreement with JRG Trust #219 ("**Landlord**") dated November 15, 1994 (the "**Lease**"), regarding real property located at 2312 W. 8th Street, Los Angeles, California (the "**Facility**"). The term of the Lease expired on November 14, 2023, and CFTE has held-over at the Facility on a month-to-month basis pursuant to Section 24 of the Lease.

**PLEASE TAKE NOTICE THAT** within 30 days after service of this notice, by May 31, 2025, CFTE must vacate and deliver possession of the Facility to Landlord. This letter serves as a 30-day notice to terminate CFTE's month-to-month tenancy in accordance with California Civil Code Section 1946.

CFTE must surrender the Facility with its personal property and operations intact. Section 10 of the Lease provides that all personal property at the Facility, such as furniture and equipment, are the property of Landlord and that CFTE must turn over the property when it vacates the premises. Further, Section 23 of the Lease provides that upon termination, CFTE "shall turn over to Lessor the entire operation of the nursing home intact without discharge of any patients" and that upon termination, CFTE "shall at once surrender and deliver up possession of the premises and any additions thereto as well as ownership and possession of all furniture, fixtures, equipment, and personal property used in said premises or in connection with the operation of the nursing home (or any other business) on said premises." Also, "Lessor shall not pay anything to Lessee for any of the furniture, fixtures, and equipment which Lessee is herein required to turn over to Lessor."

CFTE must further cooperate with all applicable laws and regulations regarding the transfer of operations at the Facility to a new tenant in accordance with the Lease. Section 11 of

MusickPeeler

Care for the Elderly, Inc.
Attn. Barry Kohn
May 1, 2025
Page 2

the Lease provides that the Premises shall be used for the purpose of operating a convalescent hospital, or similar facility, and for no other purpose. CFTE is required to "conform to all laws and ordinances, and all regulations of any government body pertaining to it" and agreed that "no action, nuisances, nor an anything which will injure the reputation of the premises shall be done or permitted."

Failure to vacate the Facility within the specified timeframe, and in accordance with the requirements of the Lease as stated above, will result in legal action against you for damages, attorney fees, and/or to recover possession of the property.

**PLEASE TAKE FURTHER NOTICE THAT** California Civil Code § 1946 states:

"State law permits former tenants to reclaim abandoned personal property left at the former address of the tenant, subject to certain conditions. You may or may not be able to reclaim property without incurring additional costs, depending on the cost of storing the property and the length of time before it is reclaimed. In general, these costs will be lower the sooner you contact your former landlord after being notified that property belonging to you was left behind after you moved out."

Sincerely,

Daniel J. Taylor
Authorized agent for Rachel Gindi, Trustee of
the JRG Trust No. 219

djt

Musick, Peeler & Garrett LLP

3627115.1

Daniel J. Taylor  Case 26-bk-10221-BR    Doc 35-1    Filed 01/16/26    Entered 01/16/26 12:15:38    Desc
MUSICK PEELER & GARRETT LLP        Exhibit A    Page 31 of 32
333 South Hope Street  2900 Los Angeles, CA 90071

SBN: 241404

## PROOF OF SERVICE

I, the undersigned declare that I served the Notice (s) below as indicated:

30-DAY NOTICE TO QUIT

The above described Notice (s) were served on the following named parties in the manner set forth below:

NAME OF OCCUPANT:   Care for the Elderly, Inc.

PERSON LEFT WITH:   Jacqueline A. (refused to provide last name)  - Front Desk Receptionist

Age: 50s | Weight: 170 | Hair: Black | Sex: Female |Height: 5'8 | Eyes: Brown | Race: Latina

DATE OF SERVICE:   May 1, 2025
TIME OF SERVICE:   3:04 PM

PROPERTY ADDRESS:   2312 W 8th St
Los Angeles, CA 90057
(BUSINESS)

☐ 1. PERSONAL SERVICE          By delivering a copy of the Notice(s) on the above named occupant(s)

☑ 2. CONSTRUCTIVE SERVICE      After due and diligent effort and after attempting to personally serve said notice(s), as
authorized by C.C.P. Section 1162(2,3) on each of the above named parties in the
manner set forth below.

Substituted Service - By leaving the copies with or in the presence of Jacqueline A. (refused to provide last name) a person at least 18 years of age apparently in charge at the office or usual place of business of the person served.  I informed him/her of the general nature of the papers. By posting a copy for each of the above named parties on  May 1, 2025 at 3:04 PM in a conspicuous place on the property; and thereafter mailing a copy to each said party by depositing said copies in the United States mail, in a sealed envelope with postage fully prepaid, addressed to each said party at their place where the property is situated on  May 1, 2025.

Fee for Service:$ .00
County:  **Los Angeles**
Registration No.:  **2018032404**
**Nationwide Legal, LLC**
**1609 James M Wood Blvd.**
**Los Angeles, CA 90015**
**(213) 249-9999**
**Ref: 46493.001**

At the time of service, I was at least 18 years of age.  I declare under penalty of perjury that the foregoing is true and correct.

Dated:  May 1, 2025.

Signature:_____

**Robert Brooks**

LA642880



**PROOF OF SERVICE**

## **PROOF OF SERVICE**

***Rachel Gindi, as Trustee of the JRG Trust, #219 v. Care For The Elderly, Inc., et al.***
**Case No. 25STCV00704**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 333 South Hope Street, Suite 2900, Los Angeles, CA 90071-3048.

On June 19, 2025, I served true copies of the following document(s) described as **NOTICE OF ERRATA RE VERIFIED FIRST AMENDED COMPLAINT** on the interested parties in this action as follows:

| | |
|---|---|
| Devin M. Senelick, Esq.<br>Gary F. Torrell, Esq.<br>HOOPER, LUNDY & BOOKMAN, P.C.<br>1875 Century Park East, Suite 1600<br>Los Angeles, CA  90067<br>Telephone: (310) 551-8111<br>Facsimile: (310) 551-0304<br>E-Mails: dsenelick@hooperlundy.com<br>          gtorrell@hooperlundy.com | Attorneys for Defendant<br>CARE FOR THE ELDERLY, INC. |

☒     **BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address p.salazar@musickpeeler.com to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on June 19, 2025, at Los Angeles, California.

_____
Paulina Salazar

MUSICK, PEELER
& GARRETT LLP